## Epler *v.* Travis, Appellant.

Argued January 20, 1941. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Edward M. Hawes,* with him *Larzelere & Wright,* for appellant.

*Robert Trucksess,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, March 24, 1941:

We are here concerned with the identification of an automobile. Plaintiff was struck and severely injured on the early morning of September 19, 1936, by an automobile, which he alleges was owned and driven by defendant. The latter denies it was his car which struck plaintiff. The case was submitted to the jury, which found a verdict in plaintiff's favor for $5,000. Defendant filed motions for judgment non obstante veredicto and for a new trial. The court refused the former and granted the latter. Defendant, contending that the evidence fails to establish that his automobile was concerned in the accident, appeals from the refusal to enter judgment in his favor and from the grant of a new trial.

About 1:30 o'clock in the morning of the day named, a collision took place on the road from Pottstown to Reading between a coal truck and an automobile in which plaintiff, Epler, was riding as a passenger. The driver of the automobile, one Bauer, was quite badly injured. The result of the collision so far as plaintiff was concerned was inconsequential. A call was made to a hospital in Pottstown for an ambulance, but before it arrived, Bauer was placed in another car and sent to the hospital. Persons had gathered at the scene of the accident. Epler, who had alighted from Bauer's automobile, was standing near the side of the roadway. An automobile, approaching from the direction of Pottstown and travelling at a speed estimated at 65 to 70 miles an hour by Ziegler, a police officer, who was standing near Epler, struck Epler, carried him some distance (his estimate was 50 feet), before he fell off, very seriously injured. The car dashed on toward Reading at

the same high speed. Officer Ziegler ran across the road to his own car, turned it around, and as he did so, saw the lights of the ambulance approaching from Pottstown. He pursued the fleeing car, following it for 6 or 7 miles, but was unable to catch up with it. He turned around, came back toward the scene of the accident, stopping on his way to telephone to the State motor police, one of whom arrived at the scene of the accident at 2:20 a. m.

Defendant, Travis, and a newspaper reporter, Achatz, were in a restaurant in Pottstown and heard the alarm of the ambulance as it started on its way in response to the call following the first accident. The two men emerged from the restaurant, inquired of the police officer which way the ambulance had gone and being informed, got into defendant's automobile, which was outside the restaurant, and followed after the ambulance. On the way they came abreast of it, Achatz called to the driver and asked him where the accident was and the ambulance driver called back, telling its location. Defendant's car then dropped back of the ambulance. Its driver said that defendant's car did not pass him. When he, the ambulance driver, got to the scene of the accident and found that cars were parked on both sides of the highway, he had to go on about a square and turn around and come back. When he did so, he saw the car of defendant and defendant and Achatz at the scene. Epler was taken in the ambulance to the hospital in Pottstown.

Later in the day in question, police officers making an investigation of the accident in an endeavor to find out whose car struck Epler, went to the home of defendant, Travis, but found that he was not there. He had not been there during the night, having stayed at the house of a friend. About 2 o'clock in the afternoon, he telephoned the police, they met him, examined his car, which showed no dents or other indications of having struck anything and no disturbance of the dust and

dirt which was on it. They did find a strand of wool about an inch long between the right front fender and the right headlight which corresponded in appearance with the sweater which plaintiff was wearing when he was struck by the automobile, which sweater had been knitted by his wife a number of years before. This strand of wool was submitted to an expert by the State police. He made a microscopic and chemical examination of it and of a sample of wool taken from plaintiff's sweater and gave as his opinion that the small strand taken from the front of the automobile was either from plaintiff's sweater or from one exactly like it. Upon the finding of this strand of wool on defendant's car, and its identification by the expert, as being similar to the material in plaintiff's sweater, plaintiff's right of recovery against defendant rests.

Against this we have proof, in plaintiff's case, by the testimony of the driver of the ambulance, that defendant's car did not pass him on the way to the scene of the accident and that when he turned his ambulance around at the scene, defendant, Achatz and their car were there. This, of course, was after the speeding car had passed.

There is a further fact that a witness, Samuel Watts, called it is true in defendant's case, testified that he was at the scene of the accident, arriving there after the first collision, that he saw a car come up the road at a terrific speed and strike the plaintiff. He saw the ambulance arrive and another car come from the same direction shortly after it. He said that while he was standing at the scene a younger man, whom he could not identify, but who he said was about the size of Achatz, interviewed him. He further testified that the car which struck plaintiff was not a large car, but was very short and that it was black. Defendant's car is large and green.

Achatz testified that he left the scene of the accident about 15 minutes after plaintiff was struck, that he

stopped at a roadhouse and telephoned the newspaper on which he was a reporter the news of both accidents. Plaintiff called as his witness the bartender at the roadhouse, who confirmed Achatz' testimony in this particular. Achatz said he then went on to the newspaper office and there wrote the story. The newspaper was produced at the trial. In it the name and address of Watts appeared as the person who described the speeding car which struck plaintiff. Achatz testified that he interviewed Watts. From this it is obvious that the writer of the article had seen Watts at the scene immediately following the accident.

Both defendant and Achatz denied it was defendant's car which struck plaintiff, both testified they stopped at the scene of the accident. This is corroborated by the testimony of the ambulance driver given, as before stated, in plaintiff's case.

The inference that it was defendant's car is sought to be drawn from the presence of the strand of wool on his automobile. That inference is not the only one that can be drawn. Even if it be assumed that the strand of wool came from plaintiff's sweater, it is not impossible to conclude that it may have gotten on defendant's car while it was standing at the scene of the accident due to its dislodgement from the sweater while plaintiff was being carried to the ambulance.

Plaintiff puts some stress upon the circumstance that the defendant did not stay in his own apartment on the night of the accident, that after returning from the scene, he went to the house of a friend and stayed there all night and until 2 o'clock the next day. The inference sought to be drawn is that he was hiding or endeavoring to avoid detection. We think a satisfactory reason for his staying in the house of a friend arises out of the evidence.

Our conclusion must be that plaintiff has not established that defendant's automobile was the one that in-

jured him and, this being so, it was error for the court to submit the case to the jury.

The order of the court, granting the new trial, is reversed and judgment is here entered for defendant.